IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FREDDY GLENN LEE,                          Case No. 6:12-cv-00885-AA
                                           OPINION AND ORDER

        Plaintiff,

    vs.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

        Defendant.
_____

Kathryn Tassinari
Robert Baron
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street, Suite 200
Eugene, Oregon 97401
    Attorneys for plaintiff

S. Amanda Marshall,
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204

Kathy Reif,
Special Assistant United States Attorney
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
      Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff Freddy Glenn Lee brings this action to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On June 19, 2009, plaintiff protectively applied for SSI, alleging a disability onset date of February 1, 2002. Tr. 183-85. After his application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 87-95. The Honorable Marilyn S. Mauer conducted hearings on December 9, 2010 and July 27, 2011. Tr. 29, 77. On November 3, 2011, ALJ Mauer found that plaintiff was not disabled within the meaning of the Act. Tr. 11-22. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied, and subsequently filed a complaint in this Court. Tr. 1-6.

Page 2 - OPINION AND ORDER

## STATEMENT OF FACTS

Born on October 11, 1959, plaintiff was 43 years old on the alleged onset date of disability and 51 years old at the time of the hearings.  Tr. 183.  He attended high school through the eleventh grade and did not receive a GED.  Tr. 82-83.  Plaintiff has no record of employment, although he performed odd jobs in the construction and mechanics industry, and served as a home caretaker for his mother and brother.  Tr. 16, 47-48.  Plaintiff alleges disability due to posttraumatic stress disorder, obsessive-compulsive disorder, depression, bipolar disorder, back injuries, osteoarthritis, and a heart condition.  Tr. 183, 211.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

Page 3 - OPINION AND ORDER

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed

disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in the national economy. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e)& (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## DISCUSSION

### I. The ALJ's Findings

The ALJ used the five-step sequential analysis outlined above to determine whether plaintiff was disabled within the meaning of the Act. At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since April 1, 2009, the SSI application date. Tr. 13. At step two, the ALJ determined plaintiff suffered from the following severe impairments: non-ischemic cardiomyopathy with ejection fraction of 40% to 45%, obesity, major depressive disorder, posttraumatic stress disorder, and right knee pain, status post meniscectomy. <u>Id.</u> At step three, the ALJ determined plaintiff did not have an impairment or

Page 5 - OPINION AND ORDER

combination of impairments that met or medically equaled those of a listed impairment. Tr. 14.

The ALJ determined plaintiff had the RFC to engage in "light work," subject to certain limitations. Tr. 15-15. The ALJ limited plaintiff to work involving simple reasoning that could be learned in 30 days or less and did not involve workplace hazards, public contact, extensive reading or writing, and climbing ladders, ropes, or scaffolds. Tr. 16. The ALJ found that plaintiff could frequently crawl, stoop, crouch, kneel, and climb up ramps or stairs; plaintiff could also occasionally grasp and engage in frequent handling/fingering with his right upper extremity. Id.

At step four, the ALJ concluded that, because plaintiff had no employment history, he was unable perform past relevant work. Tr. 20-21. Finally, at step five, the ALJ determined that there were a significant number of jobs in the national and regional economies that the plaintiff could perform. Tr. 21-22. Therefore, the ALJ found plaintiff not disabled. Tr. 22.

## II.   Plaintiff's Allegations of Error

Plaintiff alleges the ALJ erred by: (1) improperly evaluating the medical opinions of Ryan Scott, Ph.D, David Northway, Ph.D, John Allcott, M.D., and Sandi O'Brien, M.A., Q.M.H.P.; and (2) failing to include all of his impairments in the RFC, such that the step five finding was invalid.

## A.  Evaluation of the Medical Evidence

Plaintiff argues the ALJ improperly rejected the opinions of his two examining psychologists, Drs. Scott and Northway, as well as the opinions of his treating physician, Dr. Alcott, and treating counselor, Ms. O'Brien.

### i.  Evidence From Other Sources

While only evidence from acceptable medical sources can be used in ascertaining whether plaintiff has a medically determinable impairment, evidence from "other sources" is permissible only when deciding the severity of the impairment.  20 C.F.R. § 416.913(a), (d).  "Other sources" include, but are not limited to, medical sources such as nurse-practitioners and mental health counselors. Id.  To disregard these opinions, an ALJ need only provide a germane rationale.  Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).

On November 24, 2010, Ms. O'Brien, a qualified mental health professional, reported plaintiff had an inability to understand short, simple instructions and was "markedly limited" by his mental condition.  Tr. 834.  Ms. O'Brien also found plaintiff to have moderate limitations in certain social interactions and adaption. Id.  Ms. O'Brien opined that she could not "imagine [plaintiff] being able to hold down even a 10 hour a week job."  Tr. 835.

The ALJ rejected Ms. O'Brien's opinion for three reasons. First, the ALJ found that Ms. O'Brien's assessment was not consistent with her observations. Tr. 19. Second, the ALJ determined that the reliability of Ms. O'Brien's findings, which were based on plaintiff's subjective reports, were undermined by the plaintiff's lack of credibility. Id. Third, the ALJ noted that Ms. O'Brien was not an acceptable medical source. Id.

The ALJ is not required to accept opinion evidence that is not supported by clinical findings or is based on an uncredible claimant's subjective reports. See Bayliss v. Barnhart, 427 F.3d 1211, 1216-17 (9th Cir. 2005); see also Turner, 613 F.3d at 1223-24 (9th Cir. 2010). Ms. O'Brien's conclusion that plaintiff is unable to work due to his cognitive and social limitations is inconsistent with her chart notes, which indicate that plaintiff's appearance, judgment, attitude, mood, affect, alertness, memory, thought process, and thought content were all "within normal range." See, e.g., Tr. 843. Further, as the ALJ properly noted, Ms. O'Brien's report was based on plaintiff's subjective symptom testimony. See, e.g., Tr. 848-56 (Ms. O'Brien's chart notes reflecting plaintiff's subjective reports). The ALJ found that plaintiff was not credible for several clear and convincing reasons, supported by substantial evidence, including his inconsistent statements, lack of work history, his ability to work full-time as a caretaker for his disabled mother and brother after the alleged date of disability,

Page 8 - OPINION AND ORDER

his overuse of pain medications, and his criminal convictions for crimes of dishonesty. Tr. 17-20. Notably, plaintiff does not now challenge the ALJ's credibility finding. See generally Pl.'s Opening Br.; Pl.'s Reply Br. Therefore, the ALJ provided germane reasons, supported by substantial evidence, for discrediting Ms. O'Brien's opinion. As such, the ALJ's evaluation of Ms. O'Brien's opinion is affirmed.

### ii. Evidence From Acceptable Medical Sources

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Id. at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. Id. If the treating doctor's opinion is supported by medically acceptable clinical findings and is consistent with substantial evidence in the record, controlling weight is given. Id. Nonetheless, an ALJ may discount a treating doctor's uncontroverted opinion by providing "clear and convincing" reasons supported by the record. Id. (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).

Page 9 - OPINION AND ORDER

If the treating doctor's opinion is in dispute, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. Tommasetti v. Astrue, 533 F.3d 1035 at 1034 (9th Cir. 2008).

### a. Dr. Scott – Examining Psychologist

On November 9, 2009, Dr. Scott conducted a psychodiagnostic examination to evaluate plaintiff's mental impairments. Tr. 604-09. The evaluation was based on plaintiff's comments during the interview and, further, plaintiff was aware the evaluation was for purposes of assessing the existence of a disability. Tr. 604. Due to plaintiff's tangential cognitive processes and difficulty focusing, Dr. Scott found it "somewhat difficult to perform an adequate clinical interview." Tr. 608. Dr. Scott determined plaintiff met the diagnostic criteria for posttraumatic stress disorder, relating to past sexual abuse, and depression. Id. Plaintiff exhibited "slow thought processes" and "appeared to be highly disorganized cognitively," such that Dr. Scott expected him to have difficulty in work settings. Id.

The ALJ afforded only "partial weight" to Dr. Scott's findings for two reasons. First, the ALJ observed that plaintiff omitted significant facts during the examination, "suggest[ing] a lack of forthrightness in his presentation to Dr. Scott" and, further, plaintiff "was aware that the purpose of [the] examination was to

Page 10 – OPINION AND ORDER

make an assessment with respect to a disability determination," which "undermined the impact of [Dr. Scott's] conclusions." Tr. 19. Second, the ALJ found that Dr. Scott's assessment was inconsistent with Dr. Allcott's recorded observations and "more recent evidence obtained at the hearing level." Id.

An ALJ can consider a doctor's familiarity with information in the record when determining the weight accorded to their medical opinion. See Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). As discussed above, the ALJ also need not accept a medical opinion that is based on a claimant's uncredible self-reports. See Bayliss, 427 F.3d at 1216-17; see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[a]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted").

Here, the record before the Court supports the ALJ's conclusion. Plaintiff's treating physician, Dr. Allcott, noted that plaintiff's mental status exams were normal, whereas Dr. Scott found plaintiff to be "highly disorganized cognitively." Compare Tr. 430-539, 671-725 (Dr. Allcott's reports), with Tr. 604-09 (Dr. Scott's report). Additionally, while plaintiff's mood was variable with Dr. Allcott, at times endorsing feelings of sadness, he also repeatedly denied depression or anxiety. See, e.g., Tr. 430, 521, 535, 537, 680-81, 706. The fact that Dr. Allcott was plaintiff's

Page 11 - OPINION AND ORDER

treating physician and met with him numerous times, while Dr. Scott examined plaintiff once, lends support to the ALJ's finding that plaintiff's performance with Dr. Scott may have been tempered by his desire to obtain benefits.[1]   While this evidence may be interpreted more favorably to plaintiff, the ALJ's reading is nonetheless rationale and must therefore be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004) (court must uphold an ALJ's rational interpretation of the evidence).

Moreover, as the ALJ noted, plaintiff omitted important information during his evaluation with Dr. Scott.  Specifically, while plaintiff discussed his work history and the recent death of his mother and brother, he failed to mention that he provided full-time care for his mother and brother until 2009, including bathing them, paying their bills, performing their household chores, and doing their grocery shopping.     Tr. 19, 47-53, 604-09. Additionally, Dr. Scott's findings were based upon plaintiff's discredited subjective reports. Tr. 604. Thus, the ALJ gave clear and convincing rationales, supported by substantial evidence, for discrediting Dr. Scott's opinion.

---

[1] The Court is mindful of the fact that an inconsistency between medical opinions is not, alone, a sufficient basis to discredit those opinions.  See Tommasetti, 533 F.3d at 1034.

Page 12 - OPINION AND ORDER

### b. Dr. Northway - Examining Psychologist

On January 24, 2011, Dr. Northway administered a neuropsychological screening assessment to plaintiff, mainly to evaluate his anxiety and panic attacks. Tr. 857. Prior to evaluating plaintiff, Dr. Northway reviewed Dr. Scott's psychodiagnostic evaluation, as well as numerous treatment notes from Ms. O'Brien and her employer, Options Counseling Services. Id. Dr. Northway's assessment included the Wechsler Adult Intelligence Scale; plaintiff scored a 67, which "is in the extremely low or mentally retarded range." Tr. 860. Dr. Northway noted plaintiff had substantial difficulties in mental efficiency processing speed, such that he was surprised plaintiff was not put in special education classes. Id.

When Dr. Northway reviewed plaintiff's medical records, however, he found there were no notes of "cognitive deficits in terms of intellectual functioning." Tr. 861. In fact, he found chart notes from Ms. O'Brien that suggested the opposite: "she noted, 'he talked essentially about how he wishes he could see more of his ex-wife'. . . 'it is nice to have someone at the same level intellectually to converse with' suggesting [plaintiff] does not have intellectual deficits, at least not at the same level as his brother." Id.

Dr. Northway nonetheless determined that, if plaintiff test results were valid, he would have severe impairments in terms of

Page 13 - OPINION AND ORDER

his intellectual abilities and memory; he also noted that "[t]aken as a whole, it is confusing to reconcile his functioning on the cognitive tests administered for this assessment and his reported level of functioning noted in previous assessments and records." Tr. 861-62. He also opined that plaintiff "would certainly be impaired in social functioning if these test results are valid." Tr. 862. As such, Dr. Northway indicated that "validity measures"[2] should be used in future assessments. Tr. 861.

The ALJ agreed with some of Dr. Northway's findings – for example, that plaintiff could only perform tasks involving simple instructions – but gave less weight to the psychologist's conclusion that plaintiff's social skills imposed marked limitations on his ability to work with others because it was not substantiated by the record. Tr. 19-20. The ALJ cited the CDIU investigator's report, which indicated that, when plaintiff is "outside of a clinical setting and mental and physical limitations are not being actively assessed, he demonstrated increased

---

[2] Two months after his initial examination, plaintiff returned to Dr. Northway to undergo validity testing. Tr. 884-85. This report revealed that plaintiff's previous test results were "invalid." Tr. 884. Dr. Northway noted that the validity test "may have been compromised by insufficient effort"; while there was no affirmative evidence of malingering, the results as a whole were "not entirely conclusive." Tr. 884-85. Because Dr. Northway made clear that his diagnoses and mental RFC were contingent upon a valid assessment, and Dr. Northway was never contacted for an additional opinion after this subsequent evaluation was obtained, it is unclear whether and to what extent Dr. Northway's initial report accurately represents plaintiff's limitations.

Page 14 - OPINION AND ORDER

functioning." Tr. 19.  Further, the ALJ pointed to Dr. Northway's
concession that "plaintiff may have not put forth honest effort."
Tr. 20.

The ALJ provided clear and convincing reasons, supported by
substantial evidence, for rejecting this portion of Dr. Northway's
findings.  See Bagby v. Astrue, 2012 WL 1114298, *8 (D.Or. Feb. 7),
adopted by 2012 WL 1114288 (D.Or. Apr. 3, 2012) (ALJ properly
rejected examining doctor's opinion that was inconsistent with the
claimant's own prior statements about his ability to function); see
also Girard v. Astrue, 2011 WL 6753132, *6-8 (W.D.Wash. Dec. 1),
adopted by 2011 WL 6753114 (W.D.Wash. Dec. 23, 2011) (ALJ properly
discredited an examining doctor's opinion due, in part, to an
inconsistent CDIU report).  As the ALJ noted, Dr. Northway's
observations  of  plaintiff  contravened  those  of  the  CDIU
investigator. Compare 884-85, with Tr. 776-77. Specifically, the
CDIU investigator described plaintiff as "alert," "pleasant," and
"appropriate," with a "good memory of past events . . . and gave no
indication of having a poor memory or recall"; plaintiff was also
"well oriented to his surroundings and who he was talking to, and
had no trouble tracking or hearing" during the 55-minute interview.
Tr. 776. Additionally, plaintiff was observed to give "appropriate
responses to the questions without difficulty."  Id.  Further,
plaintiff informed the CDIU investigator that he frequently had
visitors, such as his ex-wife and other friends and family.  Id.

Page 15 - OPINION AND ORDER

Despite plaintiff's allegations of disabling pain, the CDIU investigator also observed that plaintiff "gave no indication of pain or discomfort," and "reported that he gets out frequently, does his own errands[,] shops at various stores[,] [and] uses public transportation." Id.

Thus, contrary to Dr. Northway's finding of marked limitations in social functioning, the CDUI report "suggest[s] that [plaintiff] retains significant social and cognitive functioning." Tr. 20. In other words, plaintiff's own statements and actions, as observed and reported by to the CDUI investigator, belie Dr. Northway's findings. This, combined with the fact that, as Dr. Northway noted, plaintiff displayed inconsistent levels of functioning in front of various providers and may not have put forth sufficient effort during the evaluation, further undermines Dr. Northway's opinion. Tr. 19-20, 861; see also Tr. 884-85. Moreover, Dr. Northway's finding of marked limitations in social functioning, even if accepted as true, does not support substantially greater functional restrictions than those already addressed in the RFC. See Tr. 16 (ALJ's RFC limiting plaintiff to no public contact).

Finally, to the extent plaintiff argues that Dr. Northway's assessment established that he is presumptively disabled under Listing 12.05C, his argument is rejected. Plaintiff bears the burden of establishing that this listing is met and, here, he failed to do so. See Pedro v. Astrue, 849 F.Supp.2d 1006, 1011

Page 16 - OPINION AND ORDER

(D.Or 2011) (outlining the elements of Listing 12.05C and stating that the claimant is required to demonstrate that these elements are met). Specifically, plaintiff argues that he is disabled based solely on his IQ score, but wholly fails to address the remaining elements of Listing 12.05C. See generally Pl.'s Opening Br.; Pl.'s Reply Br.   Regardless, as discussed above, the ALJ properly rejected Dr. Norhtway's assessment, such that the doctor's IQ assessment is invalid.[3]   See Thresher v. Astrue, 283 Fed.App. 473, 475 (9th Cir. 2008) ("[w]e do not doubt that an ALJ can decide that an IQ score is invalid").   Therefore, ALJ's evaluation of Dr. Northway's opinion is affirmed.

### c.  Dr. Allcott – Treating Physician

On July 7, 2011, Dr. Allcott filled out a questionnaire provided by plaintiff's attorneys, which was accompanied by Dr. Northway's neuropsychological screening assessment report.   Tr. 886-88.   Dr. Allcott concurred with the opinions expressed by Dr. Northway in his evaluation.   Tr. 886.   In addition, Dr. Allcott

---

[3] Even assuming, however, that the ALJ did not provide legal sufficient reasons for discrediting Dr. Northway's assessment, there is no indication that plaintiff suffered from deficits in adaptive functioning initially manifested prior age 22.   In fact, plaintiff reported to Dr. Northway that he "generally received C's" in his high school classes, "excelled in athletics" and "had never been in special education."  Tr. 858.   Further, plaintiff reported that he left school not because of learning disabilities, but rather because his family relocated.   Id.

opined that plaintiff has "chronic limitations from back and knee arthritis" and was unable to work. Tr. 888.

The ALJ gave no weight to these conclusions, as they were not accompanied by objective findings and were inconsistent with Dr. Allcott's chart notes. Tr. 18. Further, the ALJ rejected Dr. Allcott's concurrence with Dr. Northway's neuropsychological screening because Dr. Allcott is not a psychologist or mental health specialist. Id.

An ALJ may discredit a doctor's opinion if it is on a check-off questionnaire and is not accompanied by objective explanations. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). Additionally, "[a]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bayliss, 427 F.3d at 1216 (citation omitted). Dr. Alcott's rejected assessment is in the form of a check-off questionnaire. Tr. 886-88. Further, the doctor's conclusion that plaintiff could not work due to chronic back and knee arthritis was not accompanied by reference to any objective findings. Id.

In fact, Dr. Allcott's opinion was inconsistent with his chart notes, which indicate that plaintiff regularly engaged in activities of daily living and exercise, such as stretching, swimming, and biking. See, e.g., Tr. 519, 523, 683, 698, 716, 722. Moreover, Dr. Allcott observed that plaintiff's gait and station

Page 18 - OPINION AND ORDER

were normal, and that he exhibited normal spinal alignment and mobility. See, e.g., Tr. 542; see also Tr. 705-06. In addition, because Dr. Allcott is not a psychologist or mental health specialist, the ALJ appropriately disregarded opinion as to plaintiff's psychological limitations. See 20 C.F.R. § 416.927(c)(5). Accordingly, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Dr. Allcott's opinion. Therefore, the ALJ's assessment of the opinion evidence is affirmed.

B. Step Five Finding

Finally, plaintiff asserts that the ALJ's step five finding was invalid because the RFC and, by extension, the hypothetical questions posed to the VE, failed to include all of the limitations assessed by Dr. Scott, Dr. Northway, Dr. Allcott, and Ms. O'Brien. As discussed above, however, the ALJ's RFC adequately accounted for all of plaintiff's impairments that were supported by substantial evidence in the record; moreover, the dispositive hypothetical question that the ALJ posed to the VE accurately incorporated all of these limitations. Tr. 116-18. Accordingly, the ALJ's step five finding is supported by substantial evidence and was based upon the proper legal standards. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-76 (9th Cir. 2008); see also Bayliss, 427 F.3d at 1173-76.

Page 19 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this $\underline{22}$ day of July 2013.

Ann Aiken
United States District Judge